**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ARTHUR PORTER,

      Petitioner,                         Civil No. 04-CV-71350-DT
                                             HONORABLE AVERN COHN

v.

MARY BERGHUIS,

      Respondent.

_____/

**OPINION AND ORDER GRANTING PETITIONER'S MOTION FOR LEAVE TO
AMEND PETITION TO REMOVE UNEXHAUSTED CLAIMS
AND
DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I.  Introduction**

This is a habeas case under 28 U.S.C. § 2254.  Arthur Porter, ("petitioner"), is a state inmate who is currently confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, where he is serving a sentence of one to ten years in prison for the crime of assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84; and a consecutive two year sentence for the crime of felony-firearm, Mich. Comp. Laws § 750.227b.  Petitioner has filed a *pro se* petition for writ of habeas corpus claiming that he is incarcerated in violation of his constitutional rights.  Respondent, through the Attorney General's Office, filed a response, arguing that petitioner's claims  lack merit or are unexhausted.  For the reasons which follow, petitioner's motion for leave to amend the petition to remove unexhausted claims will be granted and the petition will be denied.

**II.  Procedural History**

1

Petitioner was initially charged with assault with intent to commit murder and felony-firearm. Petitioner was convicted of the lesser included offense of assault with intent to do great bodily harm, as well as the felony-firearm charge, following a non-jury trial in the Wayne County Circuit Court on March 12, 2001.

Petitioner filed an appeal of right to the Michigan Court of Appeals, presenting the first five claims that he raises in the instant petition. The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Porter,* 237040 (Mich.Ct.App. June 10, 2003). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court, in which he raised the identical claims that he raised on his appeal of right. The Michigan Supreme Court denied petitioner leave to appeal. *People v. Porter,* 469 Mich. 988 (2003). [1]

On April 12, 2004, petitioner filed an application for writ of habeas corpus, seeking relief on the following grounds, phrased by petitioner:

I. Suppression of Brady exculpatory ballistics.

II. Due process violations by prosecution (pattern to account for ballistics suppression).

III. Ineffective assistance of counsel-state interference.

IV. Ineffective assistance in failing to prepare and failure to object to late release of ballistics and witness statement and *res gestae* witness.

V. Ineffective assistance-failure to call witnesses. Record made at sentencing. Court refused to consider and said: 'file your appeal of right.' Court had duty to investigate.

---

[1] Petitioner previously filed a petition for writ of habeas corpus, which was dismissed without prejudice on the ground that petitioner had failed to exhaust his state court remedies prior to initiating his original habeas petition. *See Porter v. White,* 2001 WL 902612 (E.D. Mich. August 6, 2001).

2

VI.  Lack of jurisdiction by bench-trial judge to convict for the lesser offense.

VII.  Lack of unbiased, impartial and unprejudiced tribunal as required by the U.S. Constitution.

Respondent filed an answer, arguing that the petition should be dismissed because petitioner's sixth and seventh claims had not been exhausted with the state courts.  On October 28, 2004, petitioner filed a motion to amend his habeas petition to delete his sixth and seventh unexhausted claims, in order to avoid the dismissal of the entire petition. Petitioner later moved to have his sixth and seventh issues re-cast as "items of cumulative evidence."

### III.  Facts

The material facts leading to petitioner's conviction as gleaned from the record follow:

Tremaine Portis, the victim in this case, testified that two days prior to the shooting, he and petitioner were involved in a confrontation at the home of Tanganyika Shack, who was petitioner's girlfriend at the time.  Portis and his friend, Terrance Johnson, had gotten into an argument with Shack over a ten dollar debt that she owed Johnson.  During this dispute, petitioner became verbally aggressive and pulled out a gun.  Portis testified that he persuaded petitioner to put the gun away.  However, as Portis and Johnson were leaving Shack's house, petitioner turned around and fired a shot at Johnson.

On January 24, 2000, Portis had gotten off work at around 4:30 to 5:00 in the afternoon, when he encountered Shack in a party store.  Portis told Shack not to talk to him and stated that the events from Shack's house from two nights earlier were ridiculous. Portis exited the party store, met up with Johnson, and began walking to Johnson's home.

3

When Portis and Johnson were approaching Johnson's house, petitioner and Shack pulled up in petitioner's car, sliding to a stop a few feet from Portis. Portis testified that petitioner jumped out of his car "with attitude," and asked Portis "if he was still running his mouth." Portis testified that he gave Johnson a bag that he was carrying, so that he could defend himself, but attempted to resolve the confrontation with petitioner peacefully. Portis testified that two or three minutes later, petitioner put his hand on his shoulder, pulled out a gun, and shot Portis in his stomach. Petitioner then got into his car and left. Portis ran home and was taken to Providence Hospital. Portis indicated that the bullet was on the left side of his navel and sixty six pellets were removed from his stomach.

On cross-examination, Portis testified that petitioner's weapon was a chrome handgun, which he described as being somewhere between a .32 and .38 caliber gun. Portis admitted that shotgun pellets had been removed from his stomach. Portis testified that Shack was seated in the front passenger seat of petitioner's car and never got out of the vehicle.

Portis' testimony was corroborated by his friend, Terrance Johnson. Johnson stated that he did not know what kind of gun that petitioner had, except that it was chrome and "all silver and shiny."

Sergeant Paul Hartzell, an expert in firearms analysis, ballistics identification, and weapon identification, examined Prosecution Exhibit # 1, birdshot and casing which had been removed from the victim at Providence Hospital. Hartzell testified that Exhibit # 1 contained .410 plastic wadding, plastic fragments which were consistent with a shotgun shell, and 94 lead pellets from a .410 shotgun shell. Hartzell testified that a .410 shotgun shell can be discharged from a shotgun, a Derringer pistol designed to chamber and fire

4

.410 shells, and certain single shot pistols that were designed for that type of shotgun shell. Hartzell indicated that although an individual pistol could be designed to shoot either a bullet or a shotgun shell, no such individual weapon could be designed to shoot both a bullet and a shotgun shell. On cross-examination, Hartzell emphasized that a handgun that fires .32 or .38 caliber bullets would be incapable of firing a .410 shell.

Investigator Beryl Mandeville testified that while driving petitioner back from a lineup, petitioner stated that he shot Portis in self-defense, but that it was only birdshot that he shot the victim with. The trial court, in its findings of fact, however, rejected Officer Mandeville's testimony on this issue.

Petitioner testified that he was a former Detroit Police officer and law school graduate. Petitioner testified that at the time of the shooting, he was carrying his licensed and registered .38 caliber stainless steel snub nose revolver. Petitioner testified that Portis was a debt enforcer who had been hired to collect the $ 10.00 debt from Shack. At the time of the first confrontation at Shack's house, petitioner did not see Portis with a weapon, but believed that Portis was in possession of a weapon, because Portis informed petitioner that he had a .9 mm. weapon. Petitioner acknowledged having his .38 gun with him at Shack's house, but denied firing it.

Petitioner further testified that on the day of the shooting, Shack called him from a party store and asked for a ride, because Portis had threatened her at the store. Petitioner picked Shack up from the party store. When petitioner arrived at a yield sign, he observed Portis and Johnson. Petitioner testified that Portis began running towards his car. Petitioner got out of the car, because traffic blocked his vehicle from moving forward, and petitioner believed that his safest choice was to meet the threat from Portis head on, rather

5

than to wait for Portis to confront him and Shack while they were still trapped in the car. Petitioner claimed that he exited his vehicle because he feared for his life.

Petitioner and Portis got into an argument, during which Portis warned petitioner that he had a .9 mm. gun and that he would shoot petitioner the next time that he saw him. When petitioner saw Portis go toward his back, petitioner grabbed Portis' shoulder and brought his own .38 gun out, because he believed that Portis was attempting to reach for his own gun. When petitioner brought his gun out, Portis grabbed petitioner's arm, which caused petitioner's gun to discharge. Although petitioner acknowledged that his gun discharged, he denied that it actually hit Portis. Petitioner, however, acknowledged that he heard only one gunshot that day and never heard a second shot. Although petitioner testified that Shack owned a civil war gun that required hand made bullets, he acknowledged that he did not observe Shack with a weapon that day and had no evidence that she shot Portis. Petitioner further acknowledged that he had no idea who shot Portis. Petitioner indicated that his gun was loaded with .38 copper case shells. Petitioner further testified that he knew that his .38 gun does not shoot birdshot or any other type of shotgun shells. Petitioner stated that he was surprised when he read the police report and found out that Portis had been shot with birdshot. Petitioner stated that he never put birdshot into his .38 gun and denied telling Shack that he put birdshot into his firearm to give a warning shot to others. Petitioner admitted that he did not report this incident to the police.

Tanganyika Shack was called by the prosecution as a rebuttal witness. Shack testified that petitioner and the victim made physical contact and "all of a sudden a shot went off" "[f]rom where the two of them were standing." Shack stated that the day before the shooting, she witnessed petitioner put what looked like a shotgun shell into his

6

handgun.  Petitioner told Shack that this was "his warning shot."  Shack testified that she actually saw petitioner shoot the victim.  However, after extensive questioning, Shack admitted that she had previously told a police investigator that she had ducked down and didn't see the shooting, but explained that this was what petitioner "said I must say."  Shack testified that she was afraid and angry with petitioner.  Shack also testified that she had previously been assaulted by both petitioner and Portis.

## IV.  Analysis

### A.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that

7

the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

**B.  Petitioner's request to amend the petition to delete unexhausted claims**

Respondent argues that petitioner failed to exhaust his sixth or seventh claims with the Michigan courts and has argued that the court could dismiss the habeas petition because it contains claims which have not been properly exhausted with the state courts. In response, petitioner has asked the court to dismiss his sixth and seventh claims, *in lieu* of outright dismissal of his entire habeas petition.

A habeas petitioner has a right to amend his mixed petition containing exhausted and unexhausted claims to delete his unexhausted claims, as an alternative to the petition being dismissed. *James v. Giles*, 221 F. 3d 1074, 1077 (9th Cir. 2000). Outright dismissal of this mixed petition would be error without affording petitioner the opportunity to amend the petition by striking the unexhausted claims as an alternative to dismissal. *Anthony v. Cambra*, 236 F. 3d 568, 574 (9th Cir. 2000). Because petitioner has filed this motion to amend the petition before the court has adjudicated the issues in his petition, the motion to amend should be granted. *Stewart v. Angelone*, 186 F.R.D. 342, 343 (E.D. Va. 1999). Accordingly, the Court GRANTS petitioner leave to amend his habeas petition to raise only those claims which have been exhausted with the Michigan courts. *See Boles v. Foltz,* 559 F. Supp. 1302, 1305 (E.D. Mich. 1983). To the extent that petitioner wants the court to consider these claims as part of a cumulative errors claim, the court will address that claim below.

**C.  The *Brady*/exculpatory evidence claims**

8

The court will consolidate petitioner's two first claims for the purpose of judicial clarity.  In his first claim, petitioner contends that his due process rights were violated, because the prosecutor did not provide petitioner with Sergeant Hartzell's ballistics tests until trial.  In his second claim, petitioner contends that the prosecution failed to call Tanganyika Shack as a *res gestae* witness in its case-in-chief, chosing instead to call her as a rebuttal witness after petitioner had testified.  Petitioner also claims that the prosecution withheld Shack's written statement from the defense.

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief.  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that petitioner is contending that his due process rights were violated, this claim must fail also.  Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  There are three components of a true *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner's first *Brady* claim fails for several reasons.  First, Sergeant Hartzell's ballistics report was turned over to defense counsel at petitioner's trial.  *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete

9

failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002)(internal citations omitted).  If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *See also United States v. Bencs*, 28 F. 3d 555, 560-61 (6th Cir. 1994).  The Court of Appeals for the Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation.  Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (*quoting United States v. Agurs,* 427 U.S. 97, 112, n. 20 (1976)).

Here, any claim that the late disclosure of the ballistics report may have precluded defense counsel from adequate trial preparation is non-cognizable pursuant to *Agurs. Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)(citing *United States v. Bencs,* 28 F. 3d at 561).  In addition, any claim that the belated disclosure of these discovery materials hindered petitioner's ability for effective cross-examination lacks any substance, because petitioner has failed to offer any explanation on how the tardy disclosure of these materials hampered his ability to cross-examine the witnesses. *Id.*  A review of the trial transcript shows that Sergeant Hartzell testified that the pellets that were removed from the victim's abdomen came from a shotgun or a limited number of single-shot pistols that are designed to shoot .410 shotgun shells.  The victim also acknowledged that it was shotgun shells that were removed from his abdomen.  On cross-examination, Sergeant Hartzell admitted several times that it is impossible for a .32 or .38 caliber gun to shoot a

.410 caliber shotgun shell.  On cross-examination, Sergeant Hartzell also testified that any type of handgun or pistol would have to be specifically designed in order to be able to fire .410 shotgun shells.  Petitioner later testified that he was in possesion of a .38 caliber revolver at the time of the confrontation with the victim and that his gun was incapable of firing a shotgun shell.  Petitioner has failed to show the materiality required to show a due process violation from the prosecution's belated disclosure of Sergeant Hartzell's ballistics report, in light of the fact that defense counsel obtained the report during trial, was able to utilize the report as part of his defense, as well as the fact that petitioner has failed to demonstrate how an earlier disclosure of this ballistics report would have enabled him to present a defense such that there was a reasonable probabability that the trial court judge would have found him not guilty. *See Knighton v. Mullin,* 293 F. 3d 1165, 1175 (10th Cir. 2002).

Moreover, petitioner has failed to show that Sergeant Hartzell's ballistics report exculpated him of this crime.  The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d at 724. In rejecting petitioner's claim, the Michigan Court of Appeals noted that petitioner had testified that he was carrying a .38 caliber gun at the time of the shooting.  The victim testified that petitioner had been armed with either a .32 or .38 caliber gun.  However, as the Michigan Court of Appeals observed, the exculpatory nature of the fact that .410 shotgun shells were recovered from the victim and could not be shot out of a .32 or .38 caliber gun depended solely upon witness credibility. *People v. Porter,* Slip. Op. at * 4.

11

The Michigan Court of Appeals noted that no weapon was ever recovered or admitted into evidence and the trial court, sitting as finder of fact, had to determine whether petitioner used a .38 caliber gun or a different gun to shoot the .410 caliber shotgun shells. The trial court judge determined that whatever gun that petitioner used, it was capable of firing a .410 shotgun shell. Therefore, petitioner was unable to establish that Sergeant Hartzell's testimony was material. *Id.*

Moreover, several witnesses observed petitioner discharge a weapon during the confrontation with the victim. Petitioner himself admitted that he discharged his handgun, although he denied hitting the victim. Petitioner admitted he heard only one gunshot that day and never heard a second shot. Petitioner acknowledged that he did not observe Shack with a weapon that day and had no evidence that she shot Portis. Petitioner further acknowledged that he had no idea who shot Portis. As the Michigan Court of Appeals noted, the weapon used in the shooting was never recovered. In light of the evidence pointing towards petitioner as being the shooter, he has failed to show that Sergeant Hartzell's ballistics report exculpated him of this crime.

Petitioner's second *Brady* claim is also without merit. Petitioner first claims that the prosecutor should have called Tanganyika Shack to testify in its case-in-chief, rather than as a rebuttal witness, because Shack was a *res gestae* witness.

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000)(quoting *Cooper v. Sowders*, 837 F. 2d 284, 286 (6th Cir. 1988)). A state court evidentiary ruling will be reviewed by a

federal habeas court only if it was so fundamentally unfair as to violate a habeas petitioner's due process rights. *Coleman v. Mitchell,* 244 F. 3d 533, 542 (6th Cir. 2001). Generally, the evidentiary rulings of a state court do not rise to the level of a due process violation unless they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour,* 224 F. 3d at 552 (internal quotations omitted).

Federal law does not require the production of *res gestae* witnesses. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192, 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)).

In addition, a number of courts have held that a claim involving the admission of improper rebuttal testimony in a state criminal trial is an issue of state law that would not entitle a habeas petitioner to relief. *See Henderson v Norris,* 118 F. 3d 1283, 1286 (8th Cir. 1997)(rejecting claim that habeas petitioner was denied a fundamentally fair trial where the prosecutor presented a witness' testimony in rebuttal rather than in its case in chief); *Pickens v. Lockhart,* 802 F. Supp. 208, 217 (E.D. Ark. 1992)(petitioner's claim that it was improper for the state to present a rebuttal witness involved a matter of state law that could not serve as a basis for habeas relief, where the petitioner failed to show that the trial court's ruling violated a specific constitutional provision or that it was so prejudicial so as to violate due process); *White v. Withrow,* 2001 WL 902624, * 7 (E.D. Mich. June 22, 2001)(petitioner's due process rights were not violated when the prosecution "split the

13

proofs" by having a witness testify in rebuttal, rather than in its case in chief).

Here, the prosecutor's decision to use Tanganyika Shack as a rebuttal witness, rather than have her testify in the case in chief, involved a matter of state law that did not deprive petitioner a fundamentally fair trial.

Secondly, as the Michigan Court of Appeals noted, Tanganyika Shack was originally a witness for the defense.  There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *Mahaday v. Cason,* 367 F. Supp. 2d 1107, 1118 (E.D. Mich. 2005)(citing *Carter v. Bell,* 218 F. 3d 581, 601 (6th Cir.2000))*.*  This principle applies in the context of impeachment, as well as exculpatory evidence. *Byrd v. Collins,* 209 F. 3d 486, 517 (6th Cir. 2000).  The *Brady* rule does not assist a defendant who is aware of essential facts that would allow him or her to take advantage of the exculpatory evidence at issue. *Coleman v. Mitchell,* 268 F. 3d 417, 438 (6th Cir. 2001).  In the present case, petitioner has failed to establish that he was unaware of what Tanganyika Shack's proposed testimony was going to be or what her version of the events from the day of the shooting had been.  Petitioner is not entitled to habeas relief on his second claim.

### D.  The ineffective assistance of counsel claims

The court will consolidate petitioner's third, fourth, and fifth claims, which allege ineffective assistance of counsel, for the purpose of judicial clarity.

### 1. Legal Standard

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*.  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

### 2.  <u>Petitioner is not entitled to an evidentiary hearing on his claims</u>

As an initial matter, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of trial counsel claims, because he never attempted to properly develop a factual record for his claims in the state courts.

One of the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) states that if an applicant for a writ of habeas corpus has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that:

(A) the claim relies on:

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

15

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254 (e)(2).

Under the opening clause of § 2254 (e)(2), a failure to develop the factual basis of a claim by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence for purposes of the opening clause of this subsection of the AEDPA depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts would have been successful. *Id.* at 435. Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.*

Under M.C.R. 7.211(C)(1)(a), a criminal defendant can file a motion with the Michigan Court of Appeals to remand the matter to the trial court for an evidentiary hearing within the time provided to file an appellant's brief. Under M.C.R. 7.211(C)(1)(a)(ii), a motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing. Where a habeas petitioner has filed a motion in the Michigan Court of Appeals to remand his case to the trial court for an evidentiary hearing on his ineffective assistance of counsel claims, and supports such a motion with an affidavit or other offer of proof, he has acted with sufficient diligence to develop the factual basis for his claims in state courts so as to entitle him to an evidentiary hearing in federal court on his claims. *See Gonzelez v. Phillips,* 147 F. Supp. 2d 791, 802-03 (E.D. Mich. 2001).

16

Here, although petitioner attempted to raise some allegations about his counsel's ineffectiveness at sentencing, he never filed a motion to remand in the Michigan Court of Appeals, nor did he ever support any of his ineffective assistance of counsel claims with any affidavits or other offers of proof. Petitioner has failed to show that he acted with diligence in attempting to develop these claims in state court. Moreover, even assuming that petitioner had acted with due diligence in seeking to develop his ineffective assistance of counsel claims in state court, he still cannot meet the § 2254(e)(2) standard because it requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." *Id.* A review of petitioner's ineffective assistance of counsel claims shows that he has failed to show by clear and convincing evidence that but for these errors, no reasonable factfinder would have found him guilty of this offense.

### 3.  Individual claims

### a.    Failure to re-appoint petitioner's first counsel after the case was originally dismissed without prejudice

Petitioner initially contends that the trial court violated his Sixth Amendment right to counsel by refusing to re-appoint the same attorney to represent him after the criminal charges were re-instated against him following an earlier dismissal without prejudice.

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1351 (6th Cir. 1993)(*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair

17

opportunity to secure counsel of his own choice." *Id. (quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F. 3d at 1348 *(citing to Wheat v. United States,* 486 U.S. 153, 159 (1988)).  Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F. 2d 275, 280 (6th Cir. 1985).  One of the express limitations upon the right to choose one's own attorney is that the criminal defendant must be financially able to retain the counsel of his or her choice. *United States v. Graham*, 91 F. 3d 213, 221 (D.C.Cir. 1996).  A defendant is not denied the right to choice of counsel if he is unable to afford retained counsel and must, as a consequence, settle for a court appointed attorney. *United States v. Friedman*, 849 F. 2d 1488, 1490 (D.C. Cir. 1988).

Here, petitioner's second attorney, like his first attorney, was appointed by the court to represent petitioner because he was unable to afford his own counsel.  Because there is no absolute right to the choice of counsel, particularly if one is indigent, the trial court's failure to re-appoint petitioner's attorney from the first prosecution on these charges did not violate petitioner's Sixth Amendment rights.

## b.  Inadequate consultation

Petitioner next contends that his second counsel only met with him on three occasions, for a total of one hour.  Petitioner claims that there was inadequate consultation time between himself and his counsel to prepare a defense.

A defense attorney's failure to consult with his client is not a *per se* violation of the defendant's Sixth Amendment rights. *Buitrago v. Scully*, 705 F. Supp. 952, 955-56 (S.D.N.Y. 1989).  A counsel's failure to visit or discuss a case with a defendant prior to trial

18

and to completely review the evidence with the defendant would not render defense counsel's assistance ineffective, absent a showing of how the alleged deficiencies prejudiced the outcome of the trial. *See United States v. Goudy*, 792 F. 2d 664, 672 (7th Cir. 1986).

In this case, trial counsel's alleged failure to consult with petitioner did not prejudice him, and thus could not amount to ineffective assistance, even if counsel allegedly met with petitioner for less than one hour in preparing his defense, because petitioner has failed to offer any arguments or otherwise show how additional consultation with his counsel could have altered the outcome of the trial. *See Bowling v. Parker,* 344 F. 3d 487, 506 (6th Cir. 2003). The mere fact that petitioner's trial counsel may have spent little time with him is not enough under *Strickland* to establish ineffective assistance of counsel, without evidence of prejudice or other defects. *Id.* Thus, petitioner cannot prevail on this claim of ineffective assistance of counsel.

### c.  Failure to object to the late release or suppression of evidence

Petitioner next claims that his trial counsel failed to object to the prosecution's late disclosure of the allegedly exculpatory evidence.

The standard of prejudice for an ineffective assistance of counsel claim is the same as the materiality requirement for a *Brady* claim. *See Hutchison v. Bell,* 303 F. 3d 720, 749 (6th Cir. 2002). In light of the fact that petitioner has failed to show that any of the allegedly withheld evidence was material or exculpatory, petitioner's related ineffective assistance of counsel claim must fail also. Moreover, as indicated above, trial counsel was able to effectively cross-examine Sergeant Hartzell and Tanganyika Shack. Petitioner has therefore failed to show any prejudice from counsel's failure to object to the late disclosure

19

of evidence by the prosecution and is not entitled to habeas relief on this claim.

### d.  Failure to call witnesses to testify that Shack had confessed to the shooting

Petitioner lastly contends that counsel was ineffective for failing to call two witnesses, whom he claims would testify that Shack had confessed to them that she had shot the victim.

To present an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must make an affirmative showing as to what the missing evidence would have been and prove that the witness' testimony would have produced a different result. *See Malcum v. Burt*, 276 Supp. 2d 664, 679 (E.D. Mich. 2003).   A habeas petitioner's speculations as to what witnesses might have said, without otherwise detailing their testimony, is insufficient to show prejudice, as required to support a claim that counsel was ineffective for failing to call witnesses. *See Veal v. Cooper*, 936 F. Supp. 511, 514-15 (N.D. Ill. 1996).

Petitioner has never presented any affidavits or other offers of proof to either the Michigan courts, or to this court, which detail the testimony of these two witnesses. Petitioner acknowledges that these two witnesses were subpoenaed by counsel, but counsel decided not to call these witnesses.   Petitioner assented on the record to counsel's decision.  In the present case, petitioner's counsel was not ineffective for failing to call these two witnesses to testify about Shack's alleged confession, because petitioner has presented no credible evidence, either to the Michigan courts, or to this court, that Shack ever admitted to being the actual perpetrator in this case. *See e.g. United States ex. rel. Pecoraro v. Page,* 169 F. Supp. 2d 815, 822 (N.D. Ill. 2001).  Moreover, a defense counsel's decision not to introduce evidence of the commission of a crime by third parties

20

does not constitute ineffective assistance of counsel, where the evidence does not "point unerringly" to the guilt of the third party and the innocence of the accused. *See Hoots v. Allsbrook,* 785 F. 2d 1214, 1222 (4th Cir. 1986).

Petitioner here admitted discharging a weapon during the confrontation. Portis and Johnson both testified that petitioner discharged a firearm on the day in question. Petitioner also made a statement to the police, in which he admitted shooting the victim. Petitioner testified at trial that he heard only one gunshot that day and never heard a second shot. Petitioner further acknowledged that he did not observe Shack with a weapon that day and had no evidence that she shot Portis. Petitioner further admitted that he had no idea who shot Portis. In light of the totality of the evidence presented during trial which indicated petitioner's guilt, counsel was not ineffective for failing to present evidence of the culpability of other suspects. *See Jackson v. Anderson,* 141 F. Supp. 2d 811, 859 (N.D. Ohio 2001).

### 4.  Summary of Ineffective Assistance of Counsel Claims

Petitioner has failed to show that his attorney's performance was deficient and that any deficiencies in the performance prejudiced his defense. Therefore, the state courts' denial of relief did not result in decisions that were contrary to *Strickland. See Mahaday v. Cason,* 367 F. Supp. 2d at 1117.

### E.  Cumulative errors claim.

Petitioner has asked the court to re-cast his sixth and seventh claims as "items of cumulative evidence." The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d at 447. To the extent that petitioner is asking for habeas relief

on the grounds of cumulative error, he would not be entitled to habeas relief on this basis.

## V.  **Conclusion**

For the reasons stated above, petitioner's motion to amend his petition is **GRANTED**.   The petition for writ of habeas corpus is **DENIED** and the matter is **DISMISSED**.

SO ORDERED.

                                                    s/Avern Cohn
Dated:  August 23, 2005                      AVERN COHN
                                      UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was sent to counsel of record on this date, August 23, 2005, by electronic and/or ordinary mail.

                                      s/Julie Owens
                                      Case Manager, (313) 234-5160